[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on January 26, 1985, in Chittenden, Vermont. They each had been married and divorced. The defendant's birth name was Henstock, and her previous married name was Federico. No children were born of this marriage, but both parties have adult children from their first marriages. The defendant has resided in the State of Connecticut for the requitiste period conferring jurisdiction on this court.
The plaintiff claimed that the marriage was irretrievably broken down when the defendant put her adult children first. He testified that even when he had a knee operation, and asked her to stay in Vermont with him while he convalesced, she refused. She instead celebrated her birthday with her children, rather than remain with her husband to assist him, and to celebrate her birthday.
The plaintiff is seventy (70) years old, and is a high school graduate. He was in the Navy, and receives a pension from the United States Navy. He also, upon discharge, worked for Pratt and Whitney for twenty-six years, and has a pension. He currently resides in his trailor in Vermont, where he is a resident.
The plaintiff has an interest in the Connecticut trailor in which the defendant lives on a full-time basis. The plaintiff values the Vermont property at Nineteen Thousand, Eight Hundred ($19,800.00) Dollars. He values the Connecticut property at Thirty-six Thousand, Two Hundred, Forty ($36,240.00) Dollars. The plaintiff conducts his "hobby" of gun dealing out of his trailor home in Vermont. His Exhibit 3 is the income from the sale of firearms and components in the calendar year 1994 was less than Five Hundred ($500.00) Dollars.
In 1992, the plaintiff received some workers' compensation when injured on the job. He later retired from Pratt and Whitney in 1993. During the period that he received that compensation, his attorney was paid twenty (20%) percent of those monies. In June of 1994, his pension checks and social security checks began to be sent to him, rather than being deposited into their joint checking account. The plaintiff has met all of the pendente lite CT Page 4180-T orders of the court.
The plaintiff co-signed a loan for the defendant's son to start a lawn maintenance business. The defendant's son did not sign the note. The plaintiff contributed to that note twice, which he claims is chargeable to the defendant and her son. The defendant conceeded that the payments were made on behalf of her son, but that other checks in her registry which reflected payment to the Shelton Savings Bank were only her checks but that her son had in fact given her the money to make those payments.
In 1994, the plaintiff filed his own tax return. He will receive a refund therefrom and that amount is reflected on his tax return.
The plaintiff seeks a dissolution of marriage. He will agree to pay one-half of his UTC pension to the defendant. He will also pay One Hundred Fifty ($150.00) Dollars per week. He wants the defendant to pay the note to the Shelton Savings Bank, and that she retain the Connecticut property with all incumbrances thereon. He has proposed a list of personal property that he seeks to retrieve from the home of the defendant in Connecticut.
On cross-examination, the plaintiff was questioned concerning when he lived full-time in Vermont. He considered himself to be separated from his wife on June 16, 1994. He admitted that it was her inheritance from her father that was used for the down payment on their "vacation home" in Vermont. He claimed that they had an account at the Howard Bank which came from joint funds. He recalled an inheritance, but could not recall when or the amount of that inheritance. He thought she may have gotten Fifteen Thousand ($15,000.00) Dollars.
On June 17, 1994, he conceeded that he went to the bank and closed their joint account, even though he did not check to see if she had paid their joint bills from that account and that there were checks outstanding. On that evening, he called her and told her not to write any more checks, that he was filing for divorce, and that the marriage was over. He claimed that he did not realize that it was the end of the school year, and that her income would be ending for the summer, in that she is employed as a school bus driver. He denied that he gave her no money until she hired a lawyer. CT Page 4180-U
He said he left her with Four Hundred ($400.00) Dollars. He later produced checks, during cross-examination of the defendant, which are Defendant's Exhibits 6 — 12, inclusive. He denied knowledge that that was an account she had been saving for her granddaughter.
The plaintiff was questioned concerning his own feelings for his children to question his complaint that the marriage ended because of the defendant's dedication to her children. The plaintiff conceeded that he maintained limited contact with his daughter after the age of nine. He claimed that that was due to his former wife's relocation to South Carolina.
For a period of time, the plaintiff paid all of the cost of both properties until the parties came to court for pendente lite orders. The monthly mortgage on the Vermont property is One hundred, twenty-six ($126.00) Dollars, and Four Hundred Eighty-three ($483.00) Dollars on the Connecticut trailor note, plus Two Hundred Eighty ($280.00) Dollars for lot rental, or over Eight Hundred ($800.00) Dollars per month to run the Connecticut property, which is approximately six times the cost of living at the Vermont property.
The Vermont property is 1.1 acres, and the property in Connecticut is a rental piece, which has no value to the parties. The plaintiff paid the real estate taxes in Vermont. The plaintiff asserted that the cost of the properties was not equivalent, and that the cost of fuel in Vermont is more. The plaintiff denied that he was building up an inventory in his gun shop.
The plaintiff agreed that his wife had run the family finances during their marriage, and that they had had the funds necessary to afford their two homes. He claimed that he has less money since his retirement, and that it is more expensive for them to live separately. He was able however, to meet the expenses of the two properties for a number of months during their separation. The plaintiff agreed that he was not a "big spender" and that his check register described a person who is careful with his money. He received Three Hundred, Ninety-three ($393.00) Dollars for a period of sevnty [seventy] weeks, a portion of which was never disclosed to his wife, and which money was never put into their joint funds. He began collecting those CT Page 4180-V sums in October of 1993, but his recollection was hazy. He never deposited it, and claims that he spent it. He claimed that he was living on this money.
All household bills were paid for with the same funds he currently receives, along with her income from her employment as a school bus driver.
The parties each bought cars in 1988, with Five or Six Thousand Dollars from her inheritance as the down payment for both. The plaintiff agreed that at least two-thirds of their savings plan at UTC occurred during the course of the marriage. He did not want to give her credit for that, but claimed that all of those funds came from his employment.
During cross-examination, the plaintiff was asked about property in New Hartford, Connecticut. He conceded that he had an interest in real estate in New Hartford, but claimed that it had no value. He agreed that the assessed value of that property was Thirty-seven Thousand, Five Hundred ($37,500.00) Dollars, but that he could not sell it for that. He claimed that he and other family members have decided to abandon the property by not paying their taxes. He stated that he did not list it for sale at any time. On redirect examination, he claimed that he did not list that property on his sworn financial affidavit because it had no value to him.
In 1993, the parties filed a joint tax return. While he claimed that he thought he should file separately, he wanted to have their return prepared in Vermont, rather than by the person who had customarily done their return in Connecticut. The plaintiff expects to receive a refund.
With respect to the personal property, the plaintiff testified that he would be willing to come to Connecticut to remove his personal property, if he could find the help.
The plaintiff canceled a life insurance policy with the American Legion, for which the defendant had been designated the beneficiary. He claimed that he was unable to afford that payment when he was ordered to pay alimony. She testified that that policy was valuable to her because of the accidental death benefit which increases the death benefit. Both parties target shoot, and the plaintiff is a hunter. CT Page 4180-W
The plaintiff rested after testifying on his own behalf.
The defendant testified that she was gainfully employed during the course of their ten (10) year marriage. She had been employed as a private secretary, and then as she is currently employed. She used her income for family purposes. It was the available extra money for weekly living, and for vacations and the like. She did not retain any of her monies for herself, except for the small savings account she kept over the years of the marriage for the benefit of her granddaughter.
She testified that she did the house work, laundry, cooking, although they did go out frequently to eat. She testified that her son did alot of the yard work. She inherited money from her father's estate. She received Sixteen Thousand ($16,000.00) Dollars from the sale of her father's home, and also received Four Thousand, Seven Hundred ($4,700.00) Dollars from the estate, and a small amount from a life insurance policy of approximately Five Hundred ($500.00) Dollars. All the money went into the marriage.
The down payment for the Connecticut trailor came from her father. He gave her Six Thousand ($6,000.00) Dollars. When she received her inheritance, she put the money into the bank in Vermont, because they had always wanted to retire to Vermont. She put those funds into a joint account in Vermont. The parties needed new vehicles, so they used proceeds from the inheritance to purchase new cars. She agreed that those cars were in need of repairs.
In June of 1994, she testified that he came down from Vermont, and that they had had a pleasant weekend. On Monday morning, she went to work, planning on meeting the plaintiff in Vermont that next weekend. They followed their normal routine, and she went to Bingo on Thursday. The phone was ringing on her return home. It was the plaintiff who told her not to write any more checks, and that he was divorcing her. She testified that she was devastated and that he did not voluntarily contribute to her support until she retained counsel.
The defendant testified that when he called her, it was the day before she expected to go to Vermont for the summer. She testified that she had been offered a job as a bus driver in CT Page 4180-X Vermont, and planned to go to work when they retired to Vermont. She claimed that she never abandoned him during any period of convalescence from surgery. On the day of his surgery, she went with her children because they discussed it before, and he encouraged her to go because of the effects of anesthesia.
She did not know about the payment of workers' compensation to him or the extent of the monies received by him. During her testimony, she testified that she managed their joint checking account and paid the family bills, and that she did not see any deposits which would have reflected his receipt of workers' compensation benefits. She was aware of his spending habits over the course of the marriage, and indicated that he was not a "big spender."
She testified concerning a music box which came in the mail, with a love theme. She sent it to Vermont to him. She did not understand why he wanted a divorce, thinking that they had a decent marriage. She claimed that she was totally unprepared for his pronouncement of the end of their marriage. She claimed that he had enjoyed a good relationship with her sons and her granddaughter, and that he had been the one to go to Vermont after she had back surgery.
Her health is not good. She has a degenerating disk, and currently has a handicapped sticker for her car. She has medical insurance now through the Navy, and has had that coverage through the course of the marriage. The status of that insurance will change post-judgment, and she will be left to purchase private insurance until she is eligible for Medicare. During the separation, the plaintiff cancelled the insurance for his wife from Pratt and Whitney, so she is ineligible under COBRA benefits.
She plans to retire at age 65, because her social security benefit will be higher. She is currently sixty (60) years old, and would like to have the Vermont property. She was offered a job as a bus driver in Vermont and planned to work there and make a final decision about retirement.
The defendant testified that the plaintiff had removed many papers from the Connecticut property, of which she became aware when her attorney asked her to retrieve them for case preparation purposes. CT Page 4180-Y
The court has assessed the evidence adduced at trial, and applied the statutory criteria, and finds that they require the following distribution of marital property:
1. REAL ESTATE. The parties have agreed that the plaintiff shall retain the Vermont property, and the defendant shall retain the Connecticut property. The court orders that the plaintiff transfer all of his right, title, and interest in the Connecticut property to the defendant within thirty (30) days. The plaintiff shall have exclusive possession of the Vermont property during his natural life, but the parties shall share ownership of that property and the defendant shall retain her ownership interest therein. The plaintiff shall pay all of the costs of maintaining the Vermont property during the period of his possession thereof, including mortgage, taxes, and insurance.
The defendant shall pay all of the costs associated with the Connecticut property, including insurance while the plaintiff remains on the mortgage on those premises.
The court finds that the cost of maintaining the Connecticut property, and the lack of real property interest, will affect the distribution of other assets. The defendant is not able to meet the expenses of the property without contribution in the form of alimony from the plaintiff. The court further will not order the refinance of the Connecticut property, insofar as the defendant is not able to secure such financing on her own.
2. ALIMONY. The plaintiff shall pay the sum of Two Hundred, Seventy-five ($275.00) Dollars per week as permanent alimony. The payment shall terminate upon the death of either party, the remarriage of the defendant, or upon her cohabitation pursuant to statute. The court finds that the plaintiff left the marital home and the marriage unilaterally, and that his reasons therefor, as expressed on this record, are inadequate to support a conclusion by the court that the defendant was at fault for the breakdown of the marriage. While their marriage may not have been happy, it appeared to the court that they had reached an accommodation, and that the testimony of the defendant as to her surprise at his decision to divorce was more credible. For whatever reason he was disinclined to continue this ten year marriage, he was unable to testify as to those reasons. The defendant's testimony that she sadly accepted his decision was credible. The court also accepted CT Page 4180-Z as credible that they had a good marriage.
The defendant must work for five more years before she is eligible to retire, and invested her entire inheritance into the marriage. It was that inheritance which yeilded [yielded] the Vermont property, as well as the ability of the parties to purchase new automobiles. The defendant contributed her income, as well as her inheritance to the acquisition of marital property, kept the finances, and did most of the work within the marital homes.
3. UTC PENSION AND SAVINGS PLAN. The plaintiff is ordered to maintain the defendant as the irretrievable survivor beneficiary on his UTC Pension, for which the defendant will receive a weekly benefit of approximately Ninety ($90.00) Dollars, if she survives after his death. If she predeceases him, he may make an alternate designation as the contract allows.
The plaintiff shall pay to the defendant the entire balance of the UTC Savings Plan in the approximate amount of Thirteen ($13,000.00) Dollars, with no tax consequences to the defendant. The court will retain jurisdiction over the issue of how this order will take effect, if there are to be tax consequences. The court bases its order on the lack of candor of the plaintiff with respect to his ownership of real estate in New Hartford, Connecticut, with his siblings. He did not disclose the existence of the property on his sworn financial affidavit, and the appraised value of his interest in the property is Thirty-seven Thousand ($37,500.00) Dollars. Furthermore, the court finds credible the claim of the defendant that she was unaware of the additional workers' compensation lump sum benefit received by the plaintiff post-separation. Those funds were almost equivalent to the defendant's inheritance, but were not reinvested into the marital estate, but rather kept by the plaintiff. The court did not find credible his testimony that he "spent" all the money.
4. PERSONAL PROPERTY. The parties shall retain the property currently in their respective possession, except that the court will order the plaintiff to remove a metal desk, shelving, and his belongings from the shed from the Connecticut property within thirty (30) days. The parties shall remove other personal property, or other items of personalty as they agree from their respective homes within thirty (30) days. If the plaintiff fails to so remove the personalty, the cost of so doing will be born by CT Page 4180-AA him, and is to be paid within thirty (30) days of the presentment of a bill by defendant.
The plaintiff shall retain ownership of his gun collection, and the he business he conducts within the State of Vermont.
5. MEDICAL AND LIFE INSURANCE. The plaintiff shall pay for one-half of the cost of medical insurance for the defendant wife in addition to the order of alimony. The parties are ordered to cooperate to acquire the most cost-effective insurance that will be equivalent to that coverage that she enjoyed as a result of being married and a participant with her husband in his policies.
6. AUTOMOBILES. The parties shall retain the automobiles currently in their possession. They shall cooperate to exchange any title paperwork that is necessary to effect appropriate transfer.
7. ATTORNEYS FEES. The parties shall pay the balance of any attorneys fees due to their respective attorneys. The court previously awarded attorneys fees to the defendant, and in light of the financial orders herein, a further order of attorneys fees is not found to be equitable.
8. REAL PROPERTY TAXES — TOWN OF PROSPECT. The plaintiff shall pay the tax arrearage on the Connecticut trailer within thirty (30) days of this date. The approximate amount owed is Five Hundred, Twelve ($512.00) Dollars.
Judgement shall enter, dissolving the marriage on the grounds of irretrievable breakdown, consistent with this memorandum.
DRANGINIS, J.